Next argued case is number 17, 1720 Young against the Secretary of Veterans Affairs, Mr. Samaras. When you're ready. Okay. Good morning, your honors. May it please the court. My name is Mike Samaras and I'm representing the veteran appellant in this case, Mr. Alan Young. We believe that this case comes down to essentially three issues. The first is that both the board and the court below mistakenly interpreted the presumption of regularity as a presumption of correctness. The second is that the VA failed to meet its duty to assist when the VA examiner suggested an alternative cause to Mr. Young's traumatic aneurysm. And third is that the VA also failed to meet its duty to assist by failing to consider Mr. Young's implicit challenge of the examiner's credentials. This served to deprive Mr. Young of his due process in his ability to challenge his reviewer. Was that issue raised at the board level? Your honor, we maintain that it was raised. Mr. Young challenged both. Mr. Young explicitly challenged the content of the examiner's report when he said that. But that's not the competence of the examiner. Correct. He also implicitly challenged the competence of the examiner when he said, I am referring to issues that I may not have discussed but which were reasonably raised by the evidence in my VA claims file or in the VA's possession that should have been inferred by the regional office. Now the VA's duty to assist and frankly the entire spirit of the VA statute policies require the process to be uniquely proclaimant. And we believe that that duty to assist should have queued the VA to interpret that as a challenge to the examiner's credentials. Addressing the first issue that I mentioned, we're not going to be asking the court today to make any factual issues. However, in order to get to the legal issues, we need to build to the context of what happened below. So this case was essentially decided, this case essentially came down to a battle of expert opinions. Three of those opinions were provided by Mr. Young's thoracic surgeons who were familiar with both him and with his condition. Each of those conditions found that Mr. Young's, each of those, sorry, each of those opinions found that Mr. Young's aneurysm was a result of his 1971 motor vehicle accident. The VA examiner's opinion on the other hand. That was nine years afterwards. Correct, correct your honor, it was. The thing, the thing with aneurysms is, especially aortic aneurysms, is people don't know, people don't know that they have them. But isn't this a question of fact or application of law to fact beyond our jurisdiction? That particular, that is your honor. However, I'm just trying to, I'm trying to build the context to where exactly the legal error occurred, if you'd indulge me. The board, so the board found that the surgeon's opinion had no rationale. But the VA examiner's opinion, while it wasn't actually stated, had inherent logic to support the conclusion. Now, it was never made clear either by the board or the court below why the privilege of having inherent logic didn't also apply to Mr. Young's opinions. But it's clear here that the examiner's didn't actually have supporting rationale. The fact that the board felt the need to read this inherent logic into the opinion said on its face that it was not actually in the examiner's opinion itself. Now, based on the context here, well, before I get to that, both the board and the court supported their, supported their decisions by citing to the Nieves factors and to the presumption of regularity. Now, as I said, it's clear that there was no supporting rationale in the examiner's opinion. Yet the board, yet the, yeah, based on the context here, the VA used the liberties afforded by the presumption of regularity to presuppose that the examiner was correct and that that opinion alone should control. Now, if the presumption of regularity went no further than it was supposed to, the examiner's opinion would have been held on equal ground, would have been held on equal ground as the rest of the opinions. And then the benefit of the doubt would have gone to Mr. Young. Now, I mentioned that only to, only to show that this wasn't, this was not harmless error. This was, this was important and quite, and quite central to the case. Furthermore, as a, as a related sub issue, the presumption of regularity doesn't extend to the board. It was entirely inappropriate for the board, which didn't have any medical professionals in its midst, to weigh in on what they saw as unstated medical rationale of why, of why or why that may have been obvious. As for, as to our second issue today, the discussion of the examiner's opinion brings us to our second point. In the examiner's very short opinion, she says that, she says essentially two things. The first was that the aneurysm was traumatic in origin, and the second was that the aneurysm was not a result of the 1971 accident. Well, if we run with that logic, the examiner is inherently saying that there was an additional source of trauma in Mr. Young's past. Now, while the VA does not have any obligation to pinpoint the source of a medical condition, the duty to assist does compel the VA to take reasonable measures to look into, to cure any known deficiencies in the record, and that was, and that was the ruling in the Green versus Derwinski case. The examiner's opinion, through the completeness of the record, into doubt and suggested that there must have been another traumatic event that had not yet made it into the record. Now, the record... When you talk about the duty to assist, it doesn't look as if there was an absence of assistance. Is your position that if there was, it seems, no matter, without drawing our own that there was a connection? Is, are you from the duty to assist asking that, or saying that you're entitled to an inference of service connection when the connection is not impossible, despite wherever the board thought the weight of medical evidence came out? Well, we do, well, we do generally agree with that, Your Honor, because, again, the VA's claimant as possible. What we are, what we are saying is that even if the VA had met their duty to assist in, in their initial, in the initial part of the case, after the examiner's opinion, which identified a deficiency in the record, they did not meet their duty to assist. So once again... I'm trying to understand what you mean by duty to assist. There certainly were a lot of medical examinations. What assistance should have been provided that you say was absent? Well, the examiner's, well, well, Your Honor, the, the examiner's opinion identified a deficiency in the record. They needed to make reasonable, reasonable measures to, to try to cure that, that deficiency. So at the very least, they could have contacted Mr. Young to, to ask him about it. But that contact was never made. I, I would prefer, I would prefer to refrain to speculate as to what else they could have done, but they could have, they could have looked into the file, looked to see if there are any gaps in the records, and then, and then investigated into the records in that way. Well, the gap in the evidence was a lot, the gap in the file was the lack of evidence that the veteran presented, didn't present. Well, again, again, Your Honor... You're asking the duty of assistance to, to mean generating evidence to show entitlement when there wasn't any. Well, Your Honor, the absence of evidence is not the evidence of absence. This again, this again goes toward the board's presumption that the examiner's opinion was until it ruptures, and by that point, it's usually too late. And that's, and, you know, patients with aortic aneurysms are usually asymptomatic until, until that time occurs. Now, Mr. Young showed that the medical literature below shows that that, that that's possible, and he had the three surgeons who also agreed with him on that point. Well, that's really what I'm exploring. He showed it was possible. Yes, Your Honor. And you say, but what assistance could have been provided there is silence in that first nine years. What could have been done that wasn't done? Oh, Your Honor, I, I think that, I think that again, once, once the examiner, once the examiner identified this, this new deficiency, something should have, should have been done. I don't think that the court actually needs to come to the, come to the issue today of, of what exactly should have been done because nothing was actually done. You're asking us to say that the duty to assist was violated. That's why I'm trying to understand what assistance was conceivably available. Your Honor, I believe that at a minimum, they should have asked Mr. Young about the deficiency. And I believe that they should have, they should have re-looked at the records to see if there were any, if there were any other sources of trauma that could have been, that could have traced his, that his condition could be traced back to. But neither of those things were done in this case. Okay. Let's hear from the Secretary and we will come back to this. You've shifted for your rebuttal time. Is that how you've divided the argument? Yes. Okay. Thank you. Mr. Hellman. Good morning, Your Honors, and may it please the court. The main issue in this case, as the court, I believe, is recognizing is a classic weighing of the evidence over which this court does not have jurisdiction. The board weighed the five medical opinions here, one from the VA medical examiner and four conclusory statements that Mr. Young presented. Well, to the extent that there's a question of law before us, considering that I think everybody agrees, it's not, it's unlikely, but not impossible that there was service connection. If it's not impossible, should that end the inquiry? No, Your Honor. The burden under 38 U.S.C. 5107 is on the veteran to prove on the claimant to present and support a claim for benefits. Here, there's nothing to suggest that the evidence put forward by Mr. Young was in equipoise even with the medical exam by the VA, triggering the benefit of the Dow Doctrine. Mere possibility is not enough under the statute. Why not? In the veteran-friendly position, that is required to be imposed. For one reason, Your Honor, it would require the VA to affirmatively rule out any possible other cause of aneurysm, to affirmatively find another cause to show that the aneurysm was not possible. They found it was unlikely. They found it was less likely than not, yes, Your Honor, and that's the... They found it hadn't been proved because there were no symptoms in that period, but there were several physicians who essentially said that that was not unusual. Your Honor, the physicians said... The physician statements were mere conclusory statements saying that there was a car accident in 1971, there's an aneurysm, and I believe four or three out of the four physicians did not even refer to it as a traumatic aneurysm. They just referred to it as an aneurysm. And then each of the private medical physicians said those two events are linked without offering any explanation or analysis. But how could they? That's really what concerns me. How could they? Here's a young man, serious accident, nine years later, serious accident, including chest injury, and so these physicians come up with credible speculation that it's not impossible. Your Honor, two points on that. One, there's evidence in the record submitted by Mr. Young treatise evidence suggesting that aneurysms due to trauma occur almost instantaneously. There is treatise evidence suggesting that between 70 and 90% of blunt aortic injury sufferers die at the scene, and that another treatise suggested that aortic rupture secondary to trauma is lethal and only 1% to 2% survive. That was evidence actually put in by Mr. Young that the board here took notice of. The physicians, I think, should have provided more than just their say-so to say that the trauma caused, incurred in the car accident, caused Mr. Young's condition. There is nothing aside from just the conclusory statement offered by any of those, and it does not account for the eight or nine-year gap in symptomatology. Mr. Young had had subsequent medical exams, including one, I believe, just a month before that found that his heart and other structures in that area were unremarkable. Again, the burden here under 38 U.S.C. 5107 is on the veteran to show an entitlement to benefits. This record is not enough to overcome that burden, even if this court were to review the factual determinations that our position is or not within the court's jurisdiction. I'm not sure if I've answered your Honor's question. Well, this is the aspect that's troubling. The courts are obliged to appreciate that there is a veterans-friendly, that doubt should be resolved in favor of the veteran. And according to these objectively reasonable, credible physicians, it's not impossible. Therefore, they had a certain amount of doubt, perhaps a very small amount, but nonetheless, they said it wasn't impossible. So where do we draw the line? I think, Your Honor, mere possibility is not the standard. Even in a pro-veteran-friendly regime such as this one, the veteran still has to show that in his case it was more likely than not or as likely as not. And then the benefit of the doubt doctrine applies. And that is a more favorable standard, certainly, than the typical standard for civil litigation, where the preponderance is more likely than not. There is no benefit of the doubt rule here. Even if Mr. Young was able to show that these two options were equally likely, he would get the benefit of the doubt. But that was not the case, the record below. So I think just mere possibility is too far a standard for even in a pro-veteran statutory scheme to apply. It's simply a mere possibility. There could be any number of causes. Under 5107, the burden does fall on the veteran. I'd like to briefly touch on the point about the duty to assist. Well, first, my colleague claims that the Board here drew, made their own medical determinations. That is not what happened. The Board is permitted to draw reasonable inferences. That's what the Board did from the VA medical examiner's opinion. The duty to assist also was not violated here. The duty does not require the Board or the VA to go out and disprove any number of theories proposed by the veteran. It applies to help the veteran develop claims that are indicated in the record here. There was not developed by the Board. And lastly, Mr. Young's disagreement here with the examiner's opinion is not the same thing as disagreement or objection to the examiner's competence. If this Court has no further questions, I'm happy to yield the remainder of my time. Any questions? Okay. Thank you, Mr. Hillman. Mr. Strayer. I would have to say that we agree with you, Dr. Newman. It is, the opinions in this case were not, were not characterized properly. The three medical opinions here were not, they were conclusory in the view of the Board, but they were definitely, they were most definite in their opinion. This is, one of them said, Dr. Daniels said, I reviewed his old records, including those of the December 23, 1971, when he was in a motor vehicle accident, taking into account the time course of these events. It is my opinion that his original aneurysm was definitely the result of the motor vehicle accident. Now, the opinions didn't contain the specific and detailed rationale of why someone with an aoral aneurysm might have symptoms that would show up years later. And that's, and that was found to be deficient by the... But all of this is beyond our jurisdiction. Yes, but only... The examiner, the examiner's report, to weigh that against Dr. Daniels and the other two physicians? Right, that is, that is true. It is that, weighing the evidence is beyond your jurisdiction, of the jurisdiction of the court. However, acknowledging that there was the opinion, and that the opinions were conclusory, and that the examiner's opinion was equally conclusory, that implies that there is a, there is a duty to apply an equal playing field to Mr. Young. There was a, the examiner's opinion said that there was a traumatic event. There was evidence presented that there was this terrible trauma that happened to Mr. Young. And usually, as my colleague said, there was, the usual outcome is that they, the people who have these aneurysms die at the scene, or they die a short time later when the aneurysm bursts. A small percentage of them actually survive a long time. And there is, Mr. Young presented his treatise evidence that showed there were survivors who developed these conditions later on. There's nothing on the other side, except the examiner saying there must have been another traumatic event that caused the aortal aneurysm, but that's sheer speculation. Now, at that point, the duty to assist should have kicked in, and it should have, the Veterans Court should have, I'm sorry, the VA should have at least have gone back to Mr. Young and said, well, you're, you want to tell us how this could have happened. You're, there was some, there's something, as Judge Newman said, these are, this is the unique statutory framework that's supposed to be very pro-claimant. Everybody on all sides is supposed to be trying to help the veteran establish the claim. Instead, it seems to, in these cases, it seems to have operated as a kind of a gotcha. You didn't put in an rationale, now you can't get your benefits. It wasn't explicitly raised below, now you can't raise it here. In any other statutory framework, that's completely legitimate. That's the way it's supposed to be. But this isn't an adversarial system. We're all supposed to be here to try and help the veteran. So that is really where the, where the argument lies with regard to the duty to assist. They should have come back to him, and they should, in the cases where it's, not only is it not impossible, but it was, they merely, the court merely found that it was less likely than not, that could be a 49 to 51 percent situation. And in those such circumstances, there should be some effort that helps the veteran out in that regard. Okay, more questions? Okay. Okay, I have one minute left, and I think I would just want to say that, well, actually, if the court doesn't have any other questions, I say that's okay. I think we have the case. Thank you all. The case is taken under submission.